FILED

07/06/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

May 2, 2017 Session

## STATE OF TENNESSEE v. DANIEL EDRICK LUTRELL

**Appeal from the Circuit Court for Madison County**
No. 16-164   Donald H. Allen, Judge

_____

### No. W2016-01947-CCA-R3-CD

_____

The Defendant, Daniel Edrick Lutrell, pled guilty to vehicular homicide by reckless conduct, reckless aggravated assault, and passing in a no-passing zone. The trial court sentenced the Defendant to an effective sentence of six years as a Range I standard offender. On appeal, the Defendant argues that the trial court erred by denying probation, by ordering the Defendant to serve his sentence in confinement, and by ordering the Defendant to serve the maximum sentence for a Range I standard offender. After a thorough review of the record and applicable case law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Michael L. Weinman, Jackson, Tennessee, for the appellant, Daniel Edrick Lutrell.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jerry Woodall, District Attorney General; and Matt Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual and Procedural History

The Defendant's statement in the presentence report[1] reveals that, on April 4, 2015, the Defendant was driving to Bolivar to purchase tires from an individual. As the Defendant attempted to pass the SUV in front of him, he realized that he would also have to pass a white car in front of the SUV. The Defendant "floored it a little bit harder to get in front" of both cars. However, as the Defendant pulled alongside the white car, he saw a vehicle approaching in the oncoming lane. The Defendant and the oncoming vehicle both braked and the Defendant attempted to drive into the ditch to avoid the vehicle. However, the Defendant and the vehicle collided. The record reflects that the driver of the oncoming vehicle, Darius Traylor, died from the crash. The victim's minor step-son, J.W.,[2] who was a passenger in the victim's vehicle, survived but suffered physical and emotional injuries from the crash. At the time of the crash, the Defendant estimated that he was driving between seventy and seventy-five miles per hour, and he noted that the road was dry. The Defendant admitted that, an hour or two before he began driving, he consumed less than "half a glass of straight vodka." The Defendant also admitted that an open container of alcohol was in his vehicle, but he asserted that he had not been drinking the alcohol and was delivering it to another individual. The Defendant's blood was later tested and the Defendant's blood alcohol content was 0.079.

On April 4, 2016, the Madison County Grand Jury indicted the Defendant on two counts of vehicular homicide, reckless aggravated assault, passing in a no-passing zone, driving under the influence while impaired ("DUI"), and DUI per se. On July 18, 2016, the Defendant entered an open guilty plea to vehicular homicide as a result of conduct creating a substantial risk of death, reckless aggravated assault, and passing in a no-passing zone; the remaining charges were dismissed under the plea agreement.

At the sentencing hearing, the trial court admitted the Defendant's presentence report into evidence. Sergeant First Class Nathan Chadwick testified that he served in the U.S. Army Reserves and was stationed in Anniston, Alabama. Sergeant Chadwick had known the Defendant for approximately ten years because the Defendant was a staff sergeant, the second highest rank available for a non-commissioned officer, in the U.S. Army Reserves and was stationed at the same base. Sergeant Chadwick testified that the Defendant was "responsible for planning and organizing biological defense missions for

---

[1] The Defendant did not include in the record a transcript of his guilty plea submission hearing, thus, we rely on his statement in the presentence report for a summary of the facts.

[2] It is the policy of this court to refer to minor victims by their initials. No disrespect is intended.

the United States Army." He explained that, as of October 1, 2016, the Defendant's unit would be in the "deployment window for anything that happens anywhere in the world [that] require[d] a chemical or biological unit[]" for one year. Sergeant Chadwick stated that the Defendant was "of very vital importance" to the unit.

The Defendant testified that, after the offenses, he was cooperative with law enforcement; the Defendant complied with their request for a blood sample and spoke with officers after he was released from the hospital. He stated that on one weekend of every month he serves in the U.S. Army Reserves with his unit in Anniston, Alabama. The Defendant explained that as a condition of his release on bail, he submitted to blood alcohol content testing twice a month. He stated that he had not consumed drugs or alcohol since he was indicted for the current offenses. The Defendant asked that the trial court consider him as a candidate for probation because he could use his experience to help the other enlisted sergeants and other soldiers avoid driving while under the influence of an intoxicating substance. Apart from his service in the U.S. Army Reserves, the Defendant was also employed by Apria Healthcare as a customer inquiry representative. The Defendant informed the victim's family that he was "deeply sorry" that the offenses occurred. He stated the following: "If there's any way that I could go back and change it, I would. If there's any way I could put myself in his place, I would, but, you know, I just wish I would have the opportunity to make amends for everything."

The trial court stated that it had considered the evidence presented at the Defendant's guilty plea submission hearing as well as the proof submitted at the sentencing hearing, including the presentence report. The trial court also considered the purposes and principles of sentencing and the nature and characteristics of the Defendant's criminal conduct. The trial court noted that the Defendant had pled guilty to "a very, very serious offense;" Mr. Traylor was killed as a result of the wreck, and J.W. suffered cuts and bruises as well as "a very emotional, traumatic experience[.]" The trial court also noted that the Defendant admitted to passing in a no-passing zone and traveling in excess of the speed limit. The trial court stated that the Defendant's blood alcohol content was 0.079, which it considered to be "very strong evidence that the Defendant was under [the] influence of alcohol and certainly that in many ways contributed to the accident occurring." The trial court also considered the Defendant's testimony at the hearing, his statement in the presentence report, and the Defendant's potential for rehabilitation and treatment.

The trial court found the Defendant to be a Range I standard offender. The trial court found that several enhancement factors applied to the Defendant. It found that the Defendant had "a previous history of criminal behavior in addition to that necessary to establish the appropriate range[]" because the Defendant had three previous convictions for traffic offenses. The trial court gave great weight to the Defendant's previous

conviction of following another vehicle too closely. The trial court also gave great weight to the Defendant's two convictions for violating wildlife gaming statutes, noting that these offenses occurred after the current offenses. The trial court also noted that the Defendant's conduct during the offenses was "certainly reckless" and resulted in injuries to one victim and the death of another. The trial court also found that the Defendant's offenses involved more than one victim. Regarding mitigating factors, the trial court found that the Defendant had a good work history; the trial court gave moderate weight to this factor. The trial court also considered the Defendant's physical and mental health and the facts and circumstances surrounding the case. The trial court found that the biggest contributing factor to the offense was the Defendant's "high level of intoxication." The trial court found that the second largest contributing factor to the offense was the Defendant's violation of the speed limit; the Defendant stated that he was traveling seventy to seventy-five miles per hour while he attempted to pass the vehicles. The trial court noted that, in his statement to police, the Defendant stated that he was "doing between five and ten miles per hour over the speed limit," which the Defendant considered "allowable driving." The trial court stated that it was concerned because "the Defendant actually th[ought] [that] it [was] okay to violate the speed limit." The trial court noted that the offense was "a very high impact[,] head-on . . . , severe collision that resulted in the death of another person, which could have very easily been prevented had the Defendant been following the rules of the road[.]" The trial court also found that the fact that the Defendant was running late to meet the seller of the tires was a contributing factor.

The trial court sentenced the Defendant, as a Range I standard offender, to six years for vehicular homicide, four years for reckless aggravated assault conviction, and thirty days with release eligibility after service of seventy-five percent for improper passing in a no-passing zone. The trial court ordered the Defendant's sentences to run concurrently for an effective sentence of six years. In ordering the Defendant to serve his sentence in confinement, the trial court found that ordering probation would "unduly depreciate the seriousness of these offenses[]" and found that the Defendant was not an appropriate candidate for probation. The trial court also found that confinement was "particularly suited to provide an effective deterrent to others who are likely to commit similar offenses." The trial court noted that the offense was "an avoidable incident[]" and that the Defendant chose to drink before driving, to speed, and to "pass vehicles in a no[-]passing zone at night." The Defendant timely appeals the trial court's judgments.

## II. Analysis

### *Standard of Review*

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after "a proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). "[A]n appellate court should find an abuse of discretion when it appears that a trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2016), Sentencing Comm'n Cmts. To facilitate meaningful appellate review of a felony sentence, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-30-210(e) (2016); *Bise*, 380 S.W.3d at 706.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made on the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210 (2016); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5) (2016).

### *Maximum Felony Sentences*

The Defendant argues that the trial court erred in ordering the Defendant to serve the maximum sentence for a Range I standard offender. The State asserts that the trial court properly sentenced the Defendant within the applicable range.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2016).

Although the trial court should also consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2016); *see also Bise*, 380 S.W.3d at 699 n. 33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

Vehicular homicide as a result of conduct that created a substantial risk of death or serious bodily injury to a person is a Class C felony. Tenn. Code Ann. § 39-13-213(b)(1) (2016). A Range I sentence for a Class C felony is three to six years.[3] Tenn. Code Ann. § 40-35-112(a)(3) (2016). The trial court sentenced the Defendant to a within-range sentence of six years for his vehicular homicide conviction. Reckless aggravated assault is a Class D felony. Tenn. Code Ann. § 39-13-102(e)(1)(A)(v) (2016). A Range I sentence for a Class D felony is two to four years. Tenn. Code Ann. § 40-35-112(a)(4) (2016). The trial court sentenced the Defendant to a within-range sentence of four years for his reckless aggravated assault conviction. Because these sentences are authorized by our sentencing act, the trial court's decisions are afforded a presumption of reasonableness.

---

[3] The Defendant does not contest the trial court's finding that he is a Range I standard offender.

The trial court found that two enhancement factors applied to the Defendant: (1) that the Defendant had a previous history of criminal behavior in addition to that necessary to establish the Range I classification, and (2) that the Defendant's offenses involved more than one victim. The trial court gave great weight to the Defendant's previous convictions for traffic-related offenses and his offenses committed after the offenses at issue. The trial court also found that a mitigating factor applied to the Defendant's case, *i.e.*, that he had a good work history; the trial court gave moderate weight to this factor. We conclude that the trial court did not abuse its discretion by ordering the Defendant to serve six years for his vehicular homicide conviction and four years for his reckless aggravated assault conviction. The trial court properly ordered in-range sentences and set out its considerations on the record. The Defendant is not entitled to relief on this ground.

*Maximum Misdemeanor Sentence*

Although our supreme court has not specifically held whether the *Bise* standard of review applies to misdemeanor sentencing, it has held that "[t]he abuse of discretion standard, accompanied by a presumption of reasonableness, is the appropriate standard of appellate review for all sentencing decisions." *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013). Accordingly, we conclude that the *Bise* standard is the appropriate standard of review in misdemeanor sentencing cases. *See State v. Clifford Eric Marsh*, No. M2015-00803-CCA-R3-CD, 2016 WL 349928, at *3 (Tenn. Crim. App. Jan. 28, 2016); *State v. Sue Ann Christopher*, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *7 (Tenn. Crim. App. Mar. 14, 2013). When sentencing a defendant for a misdemeanor conviction, the trial court may conduct a separate sentencing hearing or "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." Tenn. Code Ann. § 40-35-302(a). The trial court must impose a sentence consistent with the purposes and principles of our sentencing act. Tenn. Code Ann. § 40-35-302(b). "In imposing a misdemeanor sentence, the [trial] court shall fix a percentage of the sentence that the defendant shall serve." Tenn. Code Ann. § 40-35-302(d). "In determining the percentage of the sentence to be served in actual confinement, the court shall consider the purposes of this chapter, the principles of sentencing and the enhancement and mitigating factors set forth in this chapter and shall not impose such percentages arbitrarily." Tenn. Code Ann. § 40-35-302(d). A defendant convicted of a misdemeanor is not entitled to a presumption of a minimum sentence. *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). The trial court is not required to place its specific findings in ordering a misdemeanor sentence on the record. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998). "Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility." *State v. Combs*, 945 S.W. 2d 770, 774 (Tenn. Crim. App. 1996).

Passing in a no-passing zone, a violation of Tennessee Code Annotated section 55-8-121, is a Class C misdemeanor. Tenn. Code Ann. § 55-8-103 (2016). A sentence for a Class C misdemeanor is "not greater than thirty (30) days or a fine not to exceed fifty dollars ($50.00), or both, unless otherwise provided by statute." Tenn. Code Ann. § 40-35-111 (2016). The trial court sentenced the Defendant to thirty days in the county jail with a seventy-five percent release eligibility for the improper passing conviction. Because this sentence was authorized by our sentencing act, the trial court's decision is afforded a presumption of reasonableness. As noted above, the trial court found that two enhancement factors applied to the Defendant: (1) that the Defendant had a previous history of criminal behavior in addition to that necessary to establish the Range I classification, which the trial court gave great weight, and (2) that the Defendant's offenses involved more than one victim. The trial court gave moderate weight to the mitigating factor that the Defendant had a good work history. The record supports the trial court's findings, and we conclude the trial court did not abuse its discretion in ordering the Defendant to serve thirty days for his improper passing conviction. He is not entitled to relief on this ground.

*Manner of Service*

The Defendant argues that because evidence in the record does not sufficiently support the trial court's denial of probation because probation would unduly depreciate the seriousness of the Defendant's offenses, the trial court solely ordered confinement based on the need for deterrence. The Defendant asserts this is an abuse of the trial court's discretion because the trial court failed to consider the factors outlined in *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). The State asserts that the trial court properly denied probation and ordered confinement after consideration of the relevant factors.

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *Bise*, 380 S.W. 3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6) (2016).

Tennessee Code Annotated section 40-35-303 states that:

> [a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3).

Tenn. Code Ann. § 40-35-303(a)(2016). A defendant has the burden of establishing that he is suitable for probation and demonstrating that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). When considering whether to order full probation, the trial court may consider "the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes." *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996) (citing Tenn. Code Ann. §§ 40-35-210(b)(4), -103(5), -103(1)(B)).

If a trial court denies probation, under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2016).

The Defendant cites to *State v. Shannon Ann Maness and Daryl Wayne Maness*, No. W2012-02655-CCA-R3-CD, 2014 WL 350429, at *6 (Tenn. Crim. App. Jan. 23, 2014), *perm. app. denied* (Tenn. July 15, 2014), for his argument that the trial court erred

in denying probation and ordering full confinement on the grounds that probation would unduly depreciate the seriousness of the offenses and that confinement would serve as an effective deterrent to others. In *Shannon Ann Maness, et al.*, the jury found the defendants guilty of statutory rape; the defendants both received an effective sentence of three years in confinement. *Id.* at \*1. The trial court denied probation because it found that confinement was necessary to avoid depreciating the seriousness of the offense and that confinement would be "an effective deterrent to others likely to commit similar offenses." *Id.* at \*6. This court affirmed the defendants' convictions but reversed and remanded for a new sentencing hearing because "the trial court based the denial of alternative sentencing on deterrence grounds without sufficient evidence as required under *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000)." *Id.* at \*1.

However, we conclude that our supreme court's opinion in *State v. Sihapanya*, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at \*1 (Tenn. Apr. 30, 2014) is the binding appellate precedent applicable to the Defendant's case. In *Sihapanya*, 2014 WL 2466054, at \*1, our supreme court addressed a trial court's denial of probation based on the need for deterrence and the need to avoid depreciating the seriousness of the offense. In *Sihapanya*, the defendant rear-ended the victim's vehicle, which resulted in the victim's death; the defendant admitted to drinking before driving, that he had not slept the night before, and that he fell asleep before hitting the victim's vehicle. *Id.* at \*1-2. The defendant also did not stop or give aid to the victim after the wreck. *Id.* at \*1. A majority of this court concluded that "the trial court abused its discretion by denying probation because it relied on evidence not presented to the court to support its determination." *Id.* Our supreme court concluded that "the trial court's denial of probation was not based solely on the fact that someone had died[]" and that "[t]he trial court instead combined the need to avoid depreciating the seriousness of the offense with the need for deterrence and the nature and circumstances of the offense." *Id.* at \*3. Because the trial court's findings were supported by the record, the supreme court concluded that "the heightened standard of review that applies to cases in which the trial court denies probation based on only one of these factors [wa]s inapplicable in this case." *Id.* (citing *State v. Hooper*, 29 S.W.3d 1, 13 (Tenn. 2000)); *see also State v. Christopher L. Smith*, No. M2016-00662-CCA-R3-CD, 2017 WL 1048131, at \*9 (Tenn. Crim. App. Mar. 20, 2017); *State v. John G. Apfel aka Raymond Debartolomies*, No. M2015-00944-CCA-R3-CD, 2016 WL 4254890, at \*11 (Tenn. Crim. App. Aug. 10, 2016);-, *State v. Robert Allen Lester, Jr.*, No. M2014-00225-CCA-R3-CD, 2014 WL 5501236, at \*5 (Tenn. Crim. App. Oct. 31, 2014), *perm. app. denied*, (Tenn. Feb. 13, 2015); *State v. William Avery Crisp*, No. M2013-01339-CCA-R3-CD, 2014 WL 3540646, at \*10-11 (Tenn. Crim. App. Jul. 17, 2014). The supreme court concluded that the trial court's findings were supported by the record and reinstated the trial court's denial of probation. *Id.*

Here, the trial court found that ordering probation would "unduly depreciate the seriousness of these offenses[]" and that the Defendant was not a favorable candidate for probation. The trial court also found that confinement was "particularly suited to provide an effective deterrent to others who are likely to commit similar offenses." Because the trial court identified on the record reasons consistent with the purposes and principles of sentencing for denying probation, we afford the trial court's decision a presumption of reasonableness. *See Caudle*, 388 S.W.3d at 278-79; *see also Sihapanya*, 2014 WL 2466054, at *2-3. Additionally, because the trial court based its order of confinement on multiple grounds set out in Tennessee Code Annotated section 40-35-103(1), we will not apply the heightened standard of review. *Sihapanya*, 2014 WL 2466054, at *3 ("[T]he heightened standard of review that applies to cases in which the trial court denies probation based on only one of these factors is inapplicable in this case.").

The trial court's conclusions are supported by evidence in the record; the trial court described the offense as "a very high impact head-on collision, severe collision that resulted in the death of another person, which could have very easily been prevented had the Defendant been following the rules of the road[.]" The Defendant admitted to consuming alcohol before driving, to speeding, and to attempting to improperly pass other vehicles before the crash occurred. The Defendant's blood alcohol content was 0.079, which the trial court considered to be "very strong evidence that the Defendant was under [the] influence of alcohol and certainly that in many ways contributed to the accident occurring." As a result of the Defendant's conduct, one victim died and the minor victim suffered cuts, bruises, permanent scarring, and emotional trauma. The evidence in the record supports the trial court's findings that probation would unduly depreciate the seriousness of the Defendant's offenses and that confinement would deter others from committing similar offenses. The trial court did not err in denying probation to the Defendant or by ordering the Defendant to serve his sentences in confinement. He is not entitled to relief on this ground.

### III. Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 11 -